UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:18-CR-66-PPS |
| | ) |
| EDWARD KERR, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before me on Edward Kerr's pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [DE 120]. Kerr is a 57-year-old male who suffers from asthma. [DE 122.] He is currently incarcerated at FCI Morgantown in West Virginia, which the government has represented to the court had no current cases of COVID-19 as of August 31, 2020 [DE 123]. But Kerr asserts in his recent letter that there were at least 90 documented cases as of December 3, 2020. [DE 135.] The issue is fully briefed, and for the reasons set forth below, the motion for compassionate release is denied.

**Background**

Let's begin by looking at the procedural background of this case. On June 20, 2018, Kerr was charged in an eleven-count indictment with conspiracy to commit health care fraud (18 U.S.C. § 371), health care fraud (18 U.S.C. § 1347), and forfeiture (18 U.S.C. § 982(a)(7) and 28 U.S.C. §2461(c)). [DE 1.] A total of $2,022,185 in fraudulent claims were submitted to Medicare for medically unnecessary ambulance transports of

five Medicare beneficiaries, of which Medicare paid out $757,499.06. [DE 58.] Kerr pleaded guilty on April 24, 2019, to Count I, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 371. Kerr's final offense level was 23 and he had a criminal history category of I, with a guideline range of 46-57 months. [DE 109.] On October 4, 2019, I sentenced Kerr to 37 months imprisonment, followed by one year of supervised release and ordered him to pay $757,499.06 in restitution. [DE 113.] Kerr is currently serving his sentence at FCI Morgantown with a projected release date of July 18, 2022. [DE 120.]

In support of his motion, Kerr argues the COVID-19 pandemic is an extraordinary and compelling reason to consider a reduction in his sentence, that prison conditions do not allow for preventing the transmission of the disease, incarcerated individuals are at special risk of infection given their living situations, the largest outbreaks are tied to prisons and that "everyday the Defendant spends in Morgantown raises the risk he will be infected with the virus." [DE 120 at 7.] Kerr identifies his asthma as a health concern and that the CDC recognized that the cumulative effects of asthma put him at high risk. *Id.* Additionally, he provided his medical records which support that he suffers from asthma as well as emphysema/COPD. [DE 122.]

## Discussion

The instant request is for compassionate release under the First Step Act. Kerr bears the burden of showing he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020).

Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Kerr has fully exhausted his administrative remedies and so the matter is now properly before me. *See* 18 U.S.C. § 3582(c)(1)(A). The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. All three considerations weight against release in this case.

I. **Section 3553(a) Factors**

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). The government argues that the section 3553(a) factors weigh against reduction in sentence in Kerr's case, and I agree.

Kerr pleaded guilty to health care fraud and I sentenced him to 37 months in prison, and that was a below-Guideline sentence. The case was a serious one involving a substantial breach of trust and an abuse of the Medicare system. There was over $700,00 in ill-gotten gains as reflected in the large restitution order. Kerr states he has no disciplinary actions in prison, and the only documentation in the record that supports this is a line on a print-out provided by the prison which states "good conduct time release" for his projected release. [DE 123-3.] But as his release date is July 2022, Kerr has a significant portion of his sentence left to serve. The Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not warrant release in this case. *See, e.g., United States v. Marquis Medellin*, 2020 WL 4048139, 2:15-cr-72-PPS (N.D. Ind. July 20, 2020) (denying request for compassionate release based in part on the severity of the offense); *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *4 (D. Conn. May 1, 2020) (denying motion for compassionate release where underlying offense was dangerous, finding "[n]or does the sentence of 'time served' achieve the goals of sentencing or otherwise find the proper balance of the Section 3553 sentencing factors.").

## II. Whether Extraordinary and Compelling Reasons Warrant a Sentence Reduction

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing

Guidelines (USSG) § 1B1.13.  This would allow me to reduce Kerr's sentence if I determined extraordinary and compelling reasons warrant the reduction, Kerr is not a danger to the safety of any person or the community, and the reduction is consistent with the policy statement.  USSG § 1B1.13.  The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility; or other reasons as determined by the Director of the BOP.  USSG § 1B1.13 cmt. n. 1.

Here, Kerr's health issues by themselves do not constitute extraordinary or compelling reasons to reduce his sentence.  As the court in *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020) reasoned in rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy:

> To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from.  Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.

Kerr's motion only specifically mentions asthma and supports this with his medical records. [DE 122.] The government asserts that his asthma is well-controlled and does not constitute an extraordinary and compelling factor outweighing the 3553(a) factors. [DE 123.]  Kerr's medical records show his asthma is well controlled with inhalers. One

Page 5 of 8

physician noted he "was given inhalers" for his asthma which helps when he wakes up about "once a month gasping for breath and he uses [] inhalers which helps him." [DE 122 at 2.] The chart provided by the prison does not show any emergency visits to a medical professional. [DE 123-3.] Respectfully, I find Kerr's maladies are common and treatable, and I have nothing before me that shows his health conditions affect his ability to provide self-care in the institution and therefore would not, by themselves, justify release. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event."); *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (denying compassionate release to defendant suffering from multiple conditions, including potential kidney failure, because they did not "impair his ability to provide self-care within the correctional facility.").

The central question is really whether Kerr's health, along with the enhanced risk of contracting COVID-19 at Morgantown FCI, justifies release. Even considering Kerr's asthma during the COVID-19 pandemic, it still does not meet the extraordinary and compelling standard in this case. While the CDC guidance provides that people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19, it lists a number of precautionary steps such as having a month supply of medication on

hand, wash hands, avoid close contact, wear masks, and avoid travel.[1] The medical records indicate that Kerr's asthma is under control and Kerr is a relatively young man who seems to be in relatively good health overall and suffers from a common underlying condition.

According to the government, at the time of its response, there were no current cases of COVID-19. [DE 123.]  But according to Kerr in his letter of December 3, 2020, he reported that Morgantown recorded over 90 new cases in four days. [DE 135.]  After checking the BOP's website, I note that 121 inmates and 8 staff have tested positive, 5 inmates and 7 staff have recovered.[2]  With the increased rate of COVID-19 at Morgantown, I consider what precautions the facility is taking.  The government states that Morgantown is providing weekly testing, allows for limited gatherings, all staff and inmates are required to wear masks, asymptomatic individuals are quarantined and symptomatic individuals are placed in isolation until either they test negative or are released by medical personnel, social visitation has ceased, and attorneys must be screened before visiting an inmate. [DE 123.]  The government also provides that Kerr has not tested positive for COVID-19. [DE 123.]

While I am certainly sympathetic with Kerr's situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, I do not think this is an extraordinary and compelling reason to justify release.  S*ee United States*

---

[1] *People with Moderate to Severe Asthma*, CDC, www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last updated Nov. 20, 2020).
[2] *Coronavirus*, BOP, www.bop.gov/coronavirus/ (last visited Dec. 9, 2020).

*v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

Issues surrounding the COVID-19 pandemic are changing rapidly and new developments are occurring almost every day.  At this point, based upon all the facts before me, I do not think that Kerr's sentence should be reduced or that he should be released on home confinement.

## Conclusion

Despite the severity of the COVID-19 pandemic, Kerr's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [DE 120] is DENIED. Kerr has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A). SO ORDERED.

ENTERED: December 11, 2020.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT